## THOMAS *v.* BOARD OF COMMISSIONERS OF CHATTOOGA COUNTY.

No. 14512. MAY 7, 1943.

*Wright, Willingham & Fullbright,* for plaintiff.
*James Maddox,* for defendant.

BELL, Presiding Justice. On January 6, 1943, Fred Thomas instituted an action against the board of commissioners of roads and revenues of Chattooga County, and its members, seeking the writ of mandamus to compel the defendants to issue to him a license to sell wine in that county, without the limits of any city, town, or village. The defendants filed a demurrer and an answer. It was stipulated that an election was held in Chattooga County on December 5, 1942, to determine whether the sale of wine should be prohibited, and that the result was against the sale. The court, considering the entire case as thus presented, sustained the de-

murrer, and denied the prayer for mandamus; and the plaintiff excepted. The defendants relied on the election as determining that the sale of wine would now be unlawful in Chattooga County, while it was contended by the plaintiff that the provision for local or county elections, as it formerly existed, had been repealed.

In view of these contentions, it is necessary to examine in detail several acts of the General Assembly relating to the manufacture and sale of wine. The provision for county elections with other provisions was originally contained in section 4 of the act of 1935, the entire section reading as follows:

"Sec. 4. Be it further enacted hereby, that if any Georgia producer of wine, or wines, desires to sell his product at retail, he may do so in any county where such sale is not prohibited, by filing with the ordinary of such county an application in which he shall describe the place at which he desires to retail such wine, and the ordinary shall keep a list of such applicants open to public inspection. Any county may, upon petition signed by fifteen per cent. of its registered voters, call an election to determine whether or not the manufacture and sale of wines shall be prohibited in such county; and any county may, after hearing had before the superior court, close any place retailing wines, which is not conducted in an orderly manner. In any county where alcoholic beverages may be legally sold, any person, firm, or corporation may establish wineries for the manufacture, storage, and sale of wines made from Georgia crops, under such reasonable rules and regulations as may be promulgated by the Commissioner of Agriculture, with the approval of the Governor; and the Commissioner of Agriculture is hereby authorized to formulate and publish such rules and regulations, which shall have the force and effect of law after approval by the Governor." Ga. L. 1935, p. 492.

At its regular session in 1937, the General Assembly passed an act, section 2 of which purported to amend section 4 of the act of 1935 as quoted above, by striking and repealing the first paragraph of said section, "so that the said section 4 when amended shall read as follows: Section 4. Any county may, upon petition signed by 15 % of its registered voters, call an election to determine whether or not the manufacture and sale of wines shall be prohibited in such county; and any county may, after hearing had before the superior court, close any place retailing wines, which is not conducted in an orderly manner."

The act of 1937 also amended the former act by striking from section 1 the provision as to freedom from taxation, and providing with particularity for taxation and regulation of the manufacture and sale of domestic wines, as well as the sale of foreign wines. It contained eleven sections in all, including the section as to repeal of laws in conflict. As will be noticed, the third paragraph of original section 4 of the act of 1935 was not mentioned. Ga. L. 1937, p. 851. At the extraordinary session held next afterwards, the act of 1937 was amended by changing certain of its provisions relating to taxation, but no reference whatever was made to the provision as to county elections; the amendatory act here referred to having been approved on February 16, 1938. Ga. L. Ex. Sess. 1937-1938, p. 185.

Next and finally came the act of March 27, 1941, described in its caption as an act to amend the act of 1935, "as amended by act approved February 16, 1938, extra session laws of Georgia 1937-38, pages 185-188, by providing for the licensing of retail dealers and by providing for a license tax on retail dealers by county and municipal authorities; to change the rate of taxation; to authorize the revocation and declination of licenses; and for other purposes." Ga. L. 1941, p. 234. In section 1 of this act of 1941 it was declared that the act of 1935 be amended by repealing and striking from the said act the entire section 4 thereof, and by substituting in lieu thereof a new section 4, to read as follows:

"Section 4. Be it further enacted, that when any retail business, that is the business of retailing wine, allowed under the provisions of this act, is proposed to be carried on within the corporate limits of a municipality, the person, firm, or corporation desiring to engage in the business of retailing wine shall be required to pay to the proper authority designated by the governing body of such municipality such license fee as may be fixed by the said governing body, which license shall apply to and be required for each place of retail distribution in said municipality. It is further provided that when any of said businesses retailing said wines are licensed by municipal authority, no county license fee shall be required in addition thereto. When any business of retailing wine is located outside a municipality, the governing authority of the county in which the said business of retailing wine is located is authorized

to fix an annual license fee upon the said business of retailing wine, and the governing authorities of any municipality or county may, upon proper cause and hearing, revoke any license for the retail sale of wine, or the governing authorities of any municipality or county may refuse to grant such license upon proper cause."

The act of 1941 contained only three sections. Section 1 has already been stated. Section 2 amended the act of February 16, 1938, as to matters relating to taxation, and section 3 contained a repealing clause as follows: "All laws or parts of laws relating directly or indirectly to wine and the levy and collection of tax thereon which are manufactured, sold, possessed, or offered for sale within this State, be and the same are hereby expressly repealed." As will be observed from the foregoing resumé, the provision for local or county elections to determine whether the manufacture and sale of wines shall be prohibited in a particular county appeared originally in section 4 of the act of 1935, but it also appeared in totidem verbis in the amendatory act of 1937. It thus became also an integral part of the latter act; and the real question is whether it was swept from both acts by the act of 1941. Counsel for the plaintiff contend that there was both an express and an implied repeal, their reasoning, as we understand it, being as follows: (1) Section 3 as last quoted, supra, amounted to an express repeal of such provision as to county elections, as it appeared in both the former acts; (2) the act of 1941 purports to deal exhaustively with the same subject-matter, namely, the manufacture and sale of wine, and for this reason must be considered as an implied repeal of the provision, as it appeared in any previous statute; and (3) the act of 1941 in repealing section 4 of the act of 1935 necessarily by implication struck and repealed so much of the same section as appeared in the later act of 1937.

We can not sustain any of these contentions. (1) To consider them in the order in which they have just been stated, while the repealing clause is somewhat unusual, in that it does not contain the qualifying words "in conflict with this act," which are commonly found in repealing clauses, it can not properly be considered as having a larger meaning because of such omission. Otherwise we would have an act which purported to amend one specific section in each of two previous acts, both containing several sections, and then by one general statement attempting to repeal all laws

and parts of laws relating directly or indirectly to the same subject, whether in conflict or not. Manifestly it was not the intention of the General Assembly merely by this repealing clause to strike out and repeal every section of all three of the preceding statutes, leaving only the brief act of 1941 as the entire law upon this subject; and therefore the act can not properly be given any such construction. *Board of Tax-Assessors of Decatur County* v. *Catledge,* 173 *Ga.* 656 (160 S. E. 909); 59 C. J. 902, § 506. Moreover, any such construction of this repealing clause would clearly violate the constitutional provision that no law, or section of the Code, shall be amended or repealed by mere reference to its title, or to the number of the section of the Code, but the amending or repealing act shall distinctly describe the law to be amended or repealed, as well as the alteration to be made. Code, § 2-1817. It is a well-settled rule that if a statute is equally susceptible of two constructions, one of which will harmonize it with the constitution and the other of which will render it unconstitutional, the former construction is generally to be preferred. *Fordham* v. *Sikes,* 141 *Ga.* 469 (*a*) (81 S. E. 208). Accordingly, section 3 of the act of 1941 can not be reasonably construed to have greater effect than the ordinary repealing clause; and hence we must look to other portions of the act to determine to what extent, if any, the previous laws were amended or repealed. Nor can we agree that there was a repeal by implication, in that the act of 1941 was intended as a full and comprehensive statute purporting to deal exhaustively with the subjects of manufacture and sale of wines and their regulation and taxation. We recognize the rule as to such repeal, but we do not think it applicable in this case. Compare *Horn* v. *State,* 114 *Ga.* 509 (40 S. E. 768); *City of Atlanta* v. *Goodman,* 183 *Ga.* 834 (189 S. E. 829).

This brings us to the question whether the act of 1941, in expressly repealing section 4 of the act of 1935, which contained the original provision as to local or county elections, resulted in an implied repeal of the same provision as it appeared in the amendatory act of 1937. Repeals by implication are not favored; and it has been held that, aside from the principle as to comprehensive legislation just mentioned, such a repeal will result only where a statute is clearly repugnant to a former one, and so irreconcilably inconsistent with it that the two can not reasonably stand together.

*McGregor*.v. *Clark,* 155 *Ga.* 377 (116 S. E. 823) ; *Atlantic Log & Export Co.* v. *Central Ry. Co.,* 171 *Ga.* 175 (155 S. E. 525) ; *State Board of Education* v. *County Board of Education of Richmond County,* 190 *Ga.* 588 (2), 592 (10 S. E. 2d, 369). Counsel for the plaintiff rely on *Gilbert* v. *Georgia Railroad & Banking Co.,* 104 *Ga.* 412 (30 S. E. 673), where it was ruled in effect that where an act amending a section of the Code states that certain amendments are to be added, and then declares that the section as amended shall read in a certain way, setting it forth, none of the purported amendments become effective except those which are contained in the statement as to how the section shall appear after amendment. The pronouncement thus made in the *Gilbert* case does not, in our opinion, give the answer to the present problem, since we are concerned here not only with repeal or ·amendment of section 4 of the act of 1935, which the act of 1941 declared should read in a certain way, but also with the identical provision as repeated in the act of 1937, which was not referred to in the act of 1941. There seems to be a conflict of authority on whether the repeal of an original statute will ipso facto repeal the same provisions in an intermediate statute into which they have been incorporated. For decisions supporting the view that a repeal may not be thus effectuated, see Martin *v.* Stumbo, 282 Ky. 793 (140 S. W. 2d, 405) ; Devery *v.* Webb, 58 Idaho, 118 (70 Pac. 2d, 377) ; Perkins *v.* Winslow, 33 Del. (3 W. W. Harr.) 188 (133 Atl. 235) ; Gustafsen *v.* Hammond, 87 Mont. 217 (287 Pac. 640) ; George *v.* Asheville, 80 Fed. 2d, 50 (103 A. L. R. 568 (12)) ; Milwaukee County *v.* Milwaukee Western Fuel Oil Co., 204 Wis. 107 (235 N. W. 545). As representing the contrary view, see Litton *v.* Natchitoches Oil Mill Inc., 201 La. 37 (9 So. 2d, 445) ; Hayden *v.* Hayden's Estate, 289 Mich. 42 (286 N. W. 150) ; Yakima Amusement Co. *v.* Yakima County, 192 Wash. 174 (73 Pac. 2d, 519) ; Continental Insurance Co. *v.* Simpson, 8 Fed. 2d, 439 ; Vansant *v.* Com., 108 Va. 135 (60 S. E. 753). See also 59 C. J. 924-938, §§ 526, 528, 530, 549.

The question of course will depend upon intention of the legislature, provided sufficient words have been used to express such intention. It is really not quite as bald in this instance as we have just stated it in the abstract, because the 1941 act is ambiguous; and this being true, we may look to its caption for some aid, in

the search for its meaning. Neither in the body nor in the caption is there any reference to the act of 1937, but there is reference to another act, to wit, the act of February 16, 1938; and at this point we may repeat that the act of 1941 is described in its caption merely as an act to amend the act of 1935 as amended by the act of February 16, 1938, and for other purposes, with no specific reference to other statute. It would seem, therefore, that the maxim, *inclusio unius est exclusio alterius,* would apply; and hence that it was the intention of the General Assembly to amend the act of 1935 only as it had been amended by the act of February 16, 1938, and to leave the act of 1937 entirely untouched. It must be remembered that we are here considering the question of repeal by *implication,* and therefore that it is necessary to reconcile the act of 1937 with the act of 1941 if it is reasonable to do so. "Every effort must be made to make all acts stand, and the later act will not operate as a repeal of the earlier one, if by any reasonable construction they can be reconciled." *Gray* v. *McLendon,* 134 *Ga.* 224, 230 (67 S. E. 859). In view of this principle, and considering the latter act as a whole, we think it was intended to deal only with regulation and taxation where the manufacture and sale are otherwise allowed, that is, not prohibited by a county election; and that the provision for such election as contained in the act of 1937 was not affected thereby. It may be that the act of 1941 even without aid from its caption should be construed as leaving the act of 1937 fully intact; but it is unnecessary to rule upon this question, since clearly there is such aid.

In conclusion, we hold that the provision for county elections as it now exists in the act of 1937 was not repealed by the act of 1941, and that the judge properly sustained the demurrer and denied a mandamus, as against the sole contention of the plaintiff that such provision has been repealed. In this view, it is unnecessary to determine the questions relating to procedure as raised by the defendants' demurrer, or as to exercise of discretion by local authorities in refusing a license where the sale is not prohibited.

*Judgment affirmed. All the Justices concur.*